IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**HAROLD LEON JACKSON**                                         **PLAINTIFF**

v.                                                    CAUSE NO. 3:17CV359-LG-LRA

**THE BOARD OF TRUSTEES OF**
**STATE INSTITUTIONS OF HIGHER**
**LEARNING OF THE STATE OF**
**MISSISSIPPI; et al.**                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CLAIM

BEFORE THE COURT are the [28] Motion for Partial Summary Judgment filed by Plaintiff Harold Leon Jackson and the [30] Motion for Summary Judgment filed by Defendants Dr. Glen F. Boyce, Dr. Carolyn Meyers, and the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi ("IHL"). Defendant IHL filed a [32] Response in Opposition to Plaintiff's Motion, but no further briefing has been filed. The Court has already granted in part Defendants' Motion for Summary Judgment by prior Order and dismissed Boyce and Meyers from the lawsuit. Jackson's sole remaining claim is for breach of contract against IHL. Having considered the submissions of the parties, the record, and relevant law, the Court finds that there exist genuine disputes as to material facts which preclude judgment as a matter of law. Both Jackson and IHL will be denied summary judgment on Jackson's breach of contract claim.

I. BACKGROUND

Harold Leon Jackson filed a Complaint in the Circuit Court of Hinds County, Mississippi in April 2017 against IHL, Dr. Meyers, and Dr. Boyce. Defendants subsequently removed the action to this Court on May 12, 2017. Jackson was employed by IHL as the Head Football Coach of Jackson State University ("JSU") from January 13, 2014 until his termination on October 6, 2015. IHL is the Mississippi governmental entity responsible for management and control of the State's eight public institutions of higher learning. Dr. Meyers was President of JSU during Jackson's coaching tenure, and Dr. Boyce was the Commissioner of Higher Education at IHL at the time of Jackson's termination. The Court has already dismissed Jackson's claims against Drs. Meyers and Boyce.

The parties agree that Jackson and IHL, acting through its member institution JSU, executed the Employment Agreement on January 13, 2014, which stipulates that Jackson would serve as the Head Football Coach at JSU for a period of three years beginning January 13, 2014 and ending January 12, 2017.[1] The Employment Agreement provides for an annual base salary of $260,000. (Pl.'s Mot. Ex. B, at 1, ECF No. 28-2) [hereinafter Emp't Agreement].

Jackson's Complaint alleges that IHL breached the Employment Agreement. Section 2.1 of the Employment Agreement, which is at the heart of the parties' contract dispute, provides, "This agreement shall be for a term of three (3) years . . .,

---

[1] Although Jackson alleges these facts in his Complaint, he makes, for the first time in his Motion for Partial Summary Judgment, the alternative argument that that the Employment Agreement was never valid to begin with because JSU lacked the authority to contract with him.

*with a buyout clause of $65,000 or a figure negotiated and agreed upon by both parties if terminated earlier by the University.*" (Emp't Agreement at 1) (emphasis added). Pursuant to this section, but without further negotiation, IHL offered Jackson $65,000 to "buyout" his contract on October 6, 2015. Jackson refused to accept that amount. (*See* Compl. ¶¶16-19, ECF No. 1-1.) IHL insists that this offer of $65,000 was in compliance with section 2.1's condition of early termination by the University. (Defs' Mem. to Mot. Summ. J. 6, ECF No. 27.) However, Jackson maintains that this "buyout clause" instead establishes the sum of money *he* would have owed JSU if *he* had sought to prematurely terminate the contract. (Compl. ¶17, ECF No. 1-1.) Jackson asserts that he "is entitled to be compensated at a minimum, for the value of the remainder of his Employment Agreement, in the amount of $329,808.22." (*Id.* ¶19.) He also states that "[t]here was no meeting of the minds between the parties as to the meaning of the term 'buyout clause,' or the effect of such clause." (*Id.* ¶23.)

On April 30, 2018, Plaintiff filed the instant Motion for Partial Summary Judgment. Defendants filed their Motion for Summary Judgment on May 1, 2018.

## II. DISCUSSION

Jackson's Motion for Partial Summary Judgment makes three alternative arguments in support of his position that IHL breached the Employment Agreement: (1) the Employment Agreement is invalid because JSU had no authority to contract with Jackson, only IHL has such authority; (2) the early termination clause is invalid because there was never a meeting of the minds

– 3 –

between the parties as to the meaning of this provision; and (3) the early termination clause is legally unconscionable.

Defendants' Response in Opposition addresses each argument, insisting that (1) the Employment agreement is valid because IHL's Policies and Bylaws explicitly delegate to the executive officer of each member institution the authority to hire head football coaches without IHL approval, (2) Jackson agreed to the language in the Employment agreement even if he maintains that he understood it differently from Defendants, and (3) the Employment Agreement is not unconscionable because it is not so one-sided as to be legally oppressive.

Defendants' Motion for Summary Judgment similarly argues that IHL did not breach the Employment Agreement with Jackson.

a. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

b. Analysis

The Court will address each of the parties' arguments in turn, beginning with Jackson's argument that JSU had no authority to sign the Employment Agreement.

1. JSU Had Authority to Execute the Employment Agreement

IHL is the state entity tasked with "the responsibility of managing and controlling the eight public institutions of higher learning in the State of Mississippi." *Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 814 (S.D. Miss. 2006). It was "created by the enactment of Article 8 § 213-A of the Mississippi Constitution in 1942" and draws additional authority from sections 37-101-1 through 37-101-413 of the Mississippi Code. *Id.*; *Bd. of Trs. of State Insts. of Higher Learning v. Miss. Publishers Corp.*, 478 So. 2d 269, 273 (Miss. 1985). IHL has "the power and authority to elect the heads of the various institutions of higher learning,

and contract with all deans, professors and other members of the teaching staff, and all administrative employees of said institutions for a term not exceeding four (4) years." Miss. Code Ann. § 37-101-15(g); *Bd. of Trs.*, 478 So. 2d at 273. However, "[i]t shall be the policy of [IHL] to permit the executive head of each institution to nominate for election by the board all subordinate employees of the institution over which he presides." Miss. Code Ann. § 37-101-15(g). JSU is a statutorily-created public university placed under the auspices of IHL. *Washington*, 532 F. Supp. 2d at 814; *see* Miss. Code Ann. §§ 37-101-1(g), 37-125-1.

The statutes delineating the scope of IHL's authority also mandate that IHL "shall adopt such bylaws and regulations from time to time as it deems expedient for the proper supervision and control of the several institutions of higher learning . . . ." Miss. Code Ann. § 37-101-15(c). One of IHL's regulations delegates to "the Commissioner [of IHL] and the Institutional Executive Officers of the several institutions," the power "to make all appointments and promotions of faculty and staff except as otherwise noted . . . ." IHL Policy 401.0102.[2] The requirement of full IHL Board approval is reserved for "creation, appointment, elimination, or significant modification of the position of Vice Chancellor, Provost, Vice President, Dean, or Associate/Assistant Provost, Vice President, or Vice Chancellor who supervises Deans." IHL Policy 401.0102. Another regulation makes explicit that "[a]pproval of multi-year contracts by [IHL] is not required for athletics employees . . . ." IHL Policy 801.04.

---

[2] IHL Policies and Bylaws (amended through Apr. 19, 2018), http://www.mississippi.edu/board/downloads/policiesandbylaws.pdf.

Read together, IHL Policies 401.0102 and 804.04 make clear that the Institutional Executive Officers of IHL member institutions may appoint athletic employees without approval of IHL.  Therefore, as the Institutional Executive Officer of JSU, Dr. Meyers was empowered to contract with Jackson and did not need the approval of IHL to do so.  The Employment Agreement may not be voided on the basis of JSU's supposed lack of contractual capacity.

2. The Employment Agreement is Ambiguous; a Material Issue of Fact Exists as to the Parties' Contractual Intent

Mississippi Courts' well-established standard for review and interpretation of contracts involve a three-step analysis.  *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (Miss. 2012).  First, the Court must review the express wording of the contract as a whole to determine whether the contract is ambiguous.  *Id.*  "A contract is ambiguous if it is susceptible to two reasonable interpretations."  *Id.* at 19 (citation, quotation marks, and brackets omitted).  However, "[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law."  *Id.* at 16-17 (citation and internal quotation marks omitted).  If it is unambiguous, "the intention of the contracting parties should be gleaned solely from the wording of the contract" – it must be enforced as written. *Id.* at 16 (citation and internal quotation marks omitted).

Second, "if the Court is unable to ascertain the meaning of the contract and the intent of the parties within the 'four corners' of the contract, [the Court] will apply the 'canons of contract construction.'"  *Id.* at 17 (quoting *Cherokee Ins. Co. v. Babin*, 37 So. 3d 45, 48 (Miss. 2010)).  One such canon of contract construction

provides, "Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party." *Id.* (citation and internal quotation marks omitted); *see also Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352-53 (Miss. 1990) (collecting cases espousing this rule); Jack H. Ewing, *Reservation & Exception of Minerals in Miss. Conveyancing*, 39 Miss. L.J. 39, 48-50 (1967) (listing seven Mississippi canons of contract construction).

Third, "if the meaning of the contract is still ambiguous, only then is extrinsic evidence considered." *Epperson*, 93 So. 3d at 17. "It is only when the review of a contract reaches this point that prior negotiation, agreements[,] and conversations might be considered in determining the parties' intentions in the construction of the contract." *Id.* (alteration in original) (citation and internal quotation marks omitted). Resolution of contractual ambiguity by means of conflicting parole evidence is a matter for the trier of fact. *Id.* at 18.

The Court has already made the initial first step determination that the Employment Agreement is ambiguous with respect to the meaning and the application of the buyout clause because section 2.1 is susceptible to two reasonable interpretations, including the interpretation Jackson ascribes to it.[3] (*See* Order Granting in Part and Denying in Part Mot. to Dismiss 5-6, ECF No. 9.) As previously laid out by the Court, commentaries on the topic of "buyouts" and "buyout clauses" use the terms in conflicting manners – some refer to payments

---

[3] In the context of Defendants' Motion to Dismiss, the Court's analysis did not need to proceed further.

– 8 –

made by a coach (or the newly employing institution) to his or her employer if the coach chooses to depart before his or her contract term expires, while others refer to a payment made by the employer to the coach should the employer choose to prematurely terminate the coach's contract. (*See id.*) (collecting commentaries).

The contract does not define the term ""buyout clause." Furthermore, the language surrounding the term "buyout clause" does not clarify which meaning espoused by each of the parties is intended. The three-year agreement comes "with a buyout clause of $65,000 or a figure negotiated and agreed upon by both parties if terminated earlier by the University." (Emp't Agreement at 1.) The lack of punctuation, especially when combined with the dual meaning of the term "buyout clause," leaves it unclear whether the "buyout clause" and the "figure negotiated and agreed upon" are separate and distinct or mutually exclusive concepts. If, as IHL submits, the phrase "if terminated earlier by the University" modifies both "a buyout clause of $65,000" and "a figure negotiated and agreed upon by both parties," the phrase "if terminated earlier by the University" is redundant as applied to the "buyout clause." Moreover, the "figure negotiated and agreed upon" becomes, effectively, superfluous. The University would never be required to agree to a figure larger than $65,000, and a terminated coach would never be required to accept less than $65,000.

Having determined that the Employment Agreement is ambiguous as written, the Court proceeds to apply the canons of contract construction in an attempt to resolve this ambiguity. As previously noted, one canon of construction

provides that, where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. Jackson was the non-drafting party. (*See* Resp. in Opp. Ex. A., at 8, ECF No. 33-1.) If his interpretation of the term "buyout clause" is applied to section 2.1, the provision would be read to establish a term of three years "with a buyout clause of $65,000" – a sum owed to JSU by Jackson should he elect to terminate the contract before the three-year term is up – "or a figure negotiated and agreed upon by both parties if terminated earlier by the University." This interpretation makes clear that the $65,000 is inapplicable to the present circumstances, which are instead subject to the "figure negotiated and agreed upon."

But what if the parties cannot agree to a figure as compensation for the University's early termination? The typical measure of damages for breach of contract is a sum that places the non-breaching party "'in the position where she would have been but for the breach.'" *Maness v. K & A Enters. of Miss., LLC*, No. 2017-CA-00173-SCT, 2018 WL 774010, at *10 (Miss. Feb. 8, 2018) (quoting *Wilson v. Gen. Motors Acceptance Corp.*, 883 So.2d 56, 66 (Miss. 2004)). Here, that would mean a sum equal to the unpaid salary remaining on Jackson's three year contract. This circumstance is thus akin to the one created by IHL's interpretation of the "buyout clause." Instead of $65,000 or a negotiated figure, it's a different fixed sum – the remainder due on the contract – or a negotiated figure. Again, the coach would have no incentive to accept less than Mississippi law provides, but he or she

– 10 –

would also be contractually obligated to negotiate and agree to some figure. This – the obligation to agree – does not resolve the University's early termination of the coach. Thus, the ambiguity persists.

The extrinsic evidence provided by the parties in their summary judgment briefing is at odds and may not be weighed by the Court in the context of a motion for summary judgment. Determining the contractual intent of the parties will therefore be reserved for the jury at trial. Given this conclusion, Jackson's arguments that (1) there was never a meeting of the minds as to the material terms and conditions of the Employment Agreement and (2) the "buyout clause" is unconscionable are moot. These arguments are in the alternative – that Jackson never agreed to the "buyout clause" as understood by IHL or that the "buyout clause" as understood by IHL is void – but the Court has determined that section 2.1 of the Employment Agreement is ambiguous. These arguments are predicated upon the Court finding that IHL's interpretation clearly reflects the parties' contractual intent. Moreover, Jackson's own deposition testimony is that he reviewed the Employment Agreement and agreed to the terms before he signed it. (*See* Defs' Mot. Summ. J. Ex. A, at 14, ECF No. 27-1; Pl.'s Mot. Summ. J. Ex. C, at 6, ECF No. 28-3.)

### III. CONCLUSION

The Court has concluded that neither party is entitled to summary judgment on Jackson's breach of contract claim. The buyout clause provision lacks the clarity

necessary to discern the intent of the parties.  Therefore the ambiguity must be settled by the fact finder's resolution of conflicting parole evidence.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff's [28] Motion for Partial Summary Judgment is **DENIED**, and Defendants' [30] Motion for Summary Judgment is **DENIED** insofar as it seeks summary judgment on Plaintiff's breach of contract claim.

**SO ORDERED AND ADJUDGED** this the 2nd day of July, 2018.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE